IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FILED
FEB 22 2016
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

SELECTIVE WAY INSURANCE COMPANY,

    Plaintiff,

v.                                  CIVIL NO. 2:14CV650

CRAWL SPACE DOOR SYSTEM, INC.
d/b/a CRAWL SPACE DOOR SYSTEMS, INC.,

    Defendant.

## ORDER AND OPINION

This matter comes before the Court on opposing requests for declaratory judgment regarding Selective Way Insurance Company's ("Plaintiff" or "Selective") alleged duty to defend and indemnify Crawl Space Door System, Inc. d/b/a/ Crawl Space Door Systems, Inc. ("Defendant" or "CSD") against a lawsuit filed on September 24, 2013 in the United States District Court for the District of New Jersey ("the Smart Vent action"). Selective claims the commercial liability insurance policy it issued to CSD covering a period from September 5, 2009 to September 5, 2010 ("Selective Policy") does not provide coverage for the allegations and claims set forth in the Smart Vent action. In opposition, CSD contends that at least two provisions of the Selective Policy require Selective to defend and indemnify them in the Smart Vent action.

Before the Court are opposing motions for summary judgement. ECF Nos. 17, 19. Following full briefing and a hearing on these motions, the Court took them under advisement pending the complete resolution of a Motion for Partial Judgment on the Pleadings and any subsequent pleadings filed as a result thereof in the Smart Vent action. Although the Motion for

1

Partial Judgment on the Pleadings filed in the Smart Vent action has not been fully resolved, the Court finds that the Smart Vent action has progressed sufficiently to rule on the outstanding motions for summary judgment at this time. Accordingly, for the reasons stated herein, Selective's Motion for Summary Judgment, ECF No. 17, is **GRANTED** and CSD's Motion for Partial Summary Judgment, ECF No. 19, is **DENIED**.

## I. BACKGROUND

### A. FACTS AS ALLEGED BY THE PARTIES

CSD is a Virginia corporation that manufactures, distributes, and sells various flood vent products. Compl. ¶¶ 3, 5. Selective is an insurance company that is headquartered in and organized under the laws of the state of New Jersey. Id. at ¶ 1. On September 5, 2009, Selective began providing annual coverage to CSD under commercial general liability insurance policies. Id. at ¶ 2. CSD renewed these policies annually and the parties stipulate that the Business Liability Coverage and Commercial Umbrella Liability Coverage policies for the policy period beginning September 5, 2009 and ending September 5, 2010 constitute the pertinent insurance policy for the claims and defenses presented in this action. Joint Appendix, Exhibit 2 (ECF No. 16-2); see also Selective Memorandum in Support, ¶ 27 (ECF No. 18).

On September 24, 2013, Smart Vent Products, Inc. ("Smart Vent"), a CSD competitor that also sells flood vents, initiated a lawsuit against CSD in the United States District Court for the District of New Jersey. Compl. ¶ 16; see also Compl., Exhibit A (ECF No. 4-1). Smart Vent brought five counts against CSD: (1) unfair competition under the Lanham Act; (2) unfair competition under similar New Jersey statutes; (3) unfair competition at common law; (4) negligent misrepresentation; and (5) federal trademark infringement. Compl., Exhibit A (ECF No. 4-1). The Smart Vent action was served on CSD on October 7, 2013 and CSD tendered the

defense to Selective on October 8, 2013. ECF No. 20 at 6. On December 5, 2013, Selective sent a letter to CSD disclaiming coverage for the Smart Vent action. ECF No. 16-3. CSD filed an internal appeal with Selective's Claims Internal Appeal Administrator on February 10, 2014. ECF No. 16-4. In response to the appeal, Selective agreed to defend CSD in the Smart Vent action subject to a reservation of rights set forth in a letter Selective sent to CSD on March 11, 2014. ECF No. 16-5.

### B. PROCEDURAL HISTORY

On December 22, 2014, Selective filed the instant declaratory judgment action. ECF No. 1. CSD answered the Complaint and counterclaimed for declaratory judgment on February 6, 2015. ECF No. 10. On June 11, 2015, both parties filed opposing motions for summary judgment. ECF Nos. 17, 19. On July 13, 2015, the Court heard oral arguments regarding the parties' respective motions for summary judgment. During that hearing, the parties indicated that a Motion for Partial Judgment on the Pleadings was pending in the Smart Vent action. As a result, in an Order issued on July 17, 2015, the Court took the opposing motions for summary judgement under advisement pending the complete resolution of the Motion for Partial Judgment on the Pleadings in the Smart Vent action and the filing of any pleadings in New Jersey as a result thereof. ECF No. 28. Selective subsequently requested the Court to reconsider its Order by filing a motion on July 31, 2015. ECF No. 29. After the motion was fully briefed, the Court issued an Order denying Selective's Motion for Reconsideration. ECF No. 35.

Both parties have subsequently provided the Court with multiple status reports regarding the Smart Vent action. As previously indicated, although the Motion for Partial Judgment on the Pleadings in the Smart Vent action has not been resolved, the Smart Vent action has progressed sufficiently to rule on the outstanding opposing motions for summary judgment at this time.

3

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will "be granted unless 'a reasonable jury could return a verdict for the nonmoving party' on the evidence presented." Kelley v. United Parcel Service, Inc., 2013 WL 2480211, at *1 (4th Cir. June 11, 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Id. (quoting Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002)). Moreover, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Roche v. Lincoln Property Co., 2003 WL 22002716 (E.D. Va. July 25, 2003).

In this case, summary judgment is appropriate as "the material facts are essentially uncontested and the dispute turns entirely on whether these uncontested facts fit within the scope of coverage provided by [the Selective] Policy." Bohreer v. Erie Ins. Grp., 475 F. Supp. 2d 578, 583 (E.D. Va. 2007).

### B. CHOICE OF LAW

Courts sitting in diversity must apply the forum state's substantive law. Salve Regina Coll. v. Russell, 499 U.S. 225, 226 (1991) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). In addition, a federal court hearing a state law claim must apply state law in accordance with the forum state's choice of law rules. See In re Merritt Dredging Co., Inc., 839 F.2d 203, 205 (4th Cir. 1988) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)).

Virginia law provides that "generally, the law of the place where an insurance contract is written and delivered controls issues as to its coverage." Buchanan v. Doe, 246 Va. 67, 70-71 (1993) (citing Lackey v. Virginia Sur. Co., 209 Va. 713, 715 (1969)); see also Seabulk Offshore, Ltd. V. American Home Assur. Co., 377 F.3d 408, 418-19 (4th Cir. 2004). It is undisputed that the Selective Policy pertinent to the instant action was issued and delivered to CSD in the Commonwealth of Virginia. Thus, the laws of Virginia govern Selective's alleged duty to indemnify and defend CSD in the Smart Vent action.

### C. DUTIES TO DEFEND AND INDEMNIFY

Under Virginia law, "an insurance policy is a contract to be construed in accordance with the principles applicable to all contracts." Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418-19 (4th Cir. 2004) (citing Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., 240 Va. 457 (Va. 1990)). It is well established in Virginia that "when the language in an insurance policy is clear and unambiguous, courts do not employ rules of construction; rather, they give the language its plain and ordinary meaning and enforce the policy as written." Day v. Mount Vernon Fire Ins. Co., 2013 WL 314827, at *4-5 (E.D. Va. Jan. 23, 2013) (quoting P'ship Umbrella, Inc. v. Fed. Ins. Co., 260 Va. 123, 530 S.E.2d 154, 160 (Va. 2000); see also Seabulk Offshore, 377 F.3d at 418-19. In contrast, when language in the insurance policy is "ambiguous and the intentions of the parties cannot be ascertained, the policy must be construed strictly against the insurer and liberally in favor of the insured." Seabulk Offshore, 377 F.3d at 418-19. Such ambiguity may exist when "the contract's language is of doubtful import, is susceptible of being . . . understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." Mount Vernon Fire Ins., 2013 WL 314872 at *4 (quoting Pocahontas Mining LLC v. CNX Gas Co., LLC, 276 Va. 346, 666 S.E.2d 527, 531 (Va. 2008)).

5

An insurer's duty to defend "arises whenever the Complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 397 S.E.2d 100, 102 (1990); see also Parker v. Hartford Fire Ins. Co., 222 Va. 33, 278 S.E.2d 803, 804 (1981). In contrast, "there is no duty to defend 'if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations.'" Sentry Select Ins. Co. v. Acuna, 2011 WL 5593159, at *4 (E.D. Va. Nov. 15, 2011) (quoting Brenner, 240 Va. at 189)). In order to make such a determination, a court must "follow the 'Eight Corners' Rule and look at the four corners of the underlying complaint and the four corners of the underlying insurance polic[y]." Travelers Indem. Co. of Am. V. Portal Healthcare Sols., LLC, 35 F. Supp. 3d 765, 769 (E.D. Va. 2014); see also Fuisz v. Selective Ins. Co., 61 F.3d 238, 242 (4th Cir. 1995) ("Determination of whether an insurer has a duty to defend requires examination of (1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy."). If "the underlying complaint alleges liability that 'potentially or arguably' is covered by the policy," then the insurer has a duty to defend. Sentry Select, 2011 WL 5593159 at *4 (quoting Donnelly v. Transp. Ins. Co., 589 F.2d 761, 767 (4th Cir. 1978).

Additionally, insurers bear the burden of proving that an exclusion clause applies to bar coverage. Exclusion clauses "will be construed most strongly against the insurer." Mount Vernon Fire Ins., 2013 WL 314827 at *4-5 (quoting Johnson v. Ins., Co. of N. Am., 232 Va. 340, 350 S.E.2d 616, 619 (Va. 1986)). The exclusion clause "must clearly and unambiguously bring the particular act or omission within its scope" in order to be effective. Id. (quoting Floyd v. N. Neck Ins. Co., 245 Va. 153, 427 S.E.2d 193, 196 (Va. 1993).

Finally, under Virginia law, the "insurer's duty to defend 'is broader than its obligation to pay' or indemnify an insured." Travelers Indem. Co. of Am. V. Portal Healthcare Sols., LLC, 35 F. Supp. 3d 765, 769 (E.D. Va. 2014) (quoting Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 397 S.E.2d 100, 102 (1990)). As a result, "if there is no duty to defend . . . there can be no duty to indemnify." Morrow Corp. v. Harleysville Mut. Ins. Co., 101 F. Supp. 2d 422, 426-27 (E.D. Va. 2000).

### III. ANALYSIS

CSD alleges that Selective has a duty to defend and indemnify it in the Smart Vent action based on the Personal and Advertising Injury Liability provision of the Selective Insurance Policy. This portion of the policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which the insured does not apply.

ECF No. 16-2 at SEL 0164. The Insurance Policy provides various definitions of "personal and advertising injury," two of which are relevant to this action: (1) the "disparagement provision" and; (2) the "use of another's idea in your own advertisement" provision. ECF No. 16-2 at SEL 0173. The Selective Policy provides:

> 14. "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses:
>
> > d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> >
> > f. The use of another's advertising idea in your "advertisement" . . . .[1]

---

[1] The Selective Policy defines an advertisement as "a notice that is broadcast or published to the general public or specific market segments about your goods, products, or services for the purpose of attracting customers or supports." ECF No. 16-2 at SEL 0171. "Notices that are published include material placed on the Internet or on

7

Id.

Coverage asserted under the disparagement or use of another's advertising idea provisions is subject to various exclusions identified in the Selective Policy. The Selective Policy contract under which the relevant exclusion are outlined states:

This insurance does not apply to:

> g. **Quality Or Performance Of Goods – Failure To Conform To Statements**
>
> "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement" . . .
>
> i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**
>
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
>
> However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan . . .
>
> l. **Unauthorized Use Of Another's Name Or Product**
>
> "Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

ECF No. 16-2 at SEL 0164-65. Consequently, CSD bears the burden to demonstrate that the allegations set forth in the <u>Smart Vent</u> Complaint fall within either the disparagement or use of another's advertising idea provisions. In the event of coverage under either provision, Selective bears the burden to demonstrate whether any of the stated exclusions bar coverage.

A. The <u>Smart Vent</u> Complaint

---

similar electronic means of communication." Id. In addition, "that part of a web-site that is about . . . goods, products or services for the purposes of attracting customers or supporters is considered an advertisement." Id.

8

In the New Jersey suit, Smart Vent brought five counts against CSD: (1) unfair competition under the Lanham Act; (2) unfair competition under similar New Jersey statutes; (3) unfair competition at common law; (4) negligent misrepresentation; and (5) federal trademark infringement. ECF No. 4-1. The Smart Vent Complaint centers on claims contending that CSD engaged in false and misleading advertising and trademark infringement. In particular, the Smart Vent Complaint alleges that: (1) CSD falsely advertises its flood vents as compliant with the Federal Emergency Management Agency's ("FEMA") requirements; (2) CSD overstates the coverage areas of its flood vents and makes misleading statements that its products are the "best products in the market," are "unparalleled by industry standards," and "allow maximum . . . protection;" (3) CSD falsely advertised that their flood vents covered more space than the Smart Vent flood vents; (4) CSD misled consumers into believing their products were protected by utility patents, when in fact they only have design patents; and (5) CSD used Smart Vent's incontestable trademark in internet marketing. CSD contends that the allegations and injuries set forth in the Smart Vent Complaint fall within either the disparagement or use of another's advertising idea provisions contained in the Selective Policy.

**B. The Disparagement Provision**

Although the Smart Vent Complaint contains no direct claims of disparagement, CSD contends that at least two of the Smart Vent allegations constitute disparagement and therefore trigger coverage under the Selective Policy. In support of this contention, CSD first points to paragraph thirty-eight of the Smart Vent Complaint, which discusses CSD's advertising claims that its products are the "best products in the market," "allow maximum . . . ventilation [and] flood protection," and are "unparalleled by industry standards." ECF No. 16-2 at SEL 0009-10. Second, CSD notes paragraphs forty-nine and fifty, which state that "Crawl Space Doors

advertises that its 8" x 16" flood vent product serves more enclosed space than the Smart Vent 8" x 16" flood vent . . . [and] sells its 8" x 16" flood vent at a price less than Smart Vent's 8" x 16" flood vent." Id. at SEL 0011. CSD argues these claims of general superiority and direct comparison to Smart Vent products constitute disparagement. Selective, on the other hand, contends the Smart Vent Complaint fails to assert the proper elements of a disparagement claim under Virginia or New Jersey law. In addition, Selective argues that the underlying complaint is premised exclusively on injury arising from CSD's alleged false statements and misrepresentations regarding its own products rather than disparagement of Smart Vent products.

The parties heavily dispute the meaning of the term disparagement as contained in the Selective Policy. In addition, the parties dispute whether or not the Smart Vent allegations fit within any of the proposed definitions of the term. Although the parties' readings of the term disparagement vary widely, the Court need not determine its precise meaning to resolve the present controversy as, even assuming *arguendo* that disparagement is somehow alleged sufficiently to trigger coverage under the Selective Policy, the relevant exclusions relieve Selective of its duty to defend and indemnify CSD. Thus, it is unnecessary to decide if paragraphs thirty-eight, forty-nine, and fifty of the Smart Vent Complaint are simply mere puffery or constitute disparagement under Virginia or New Jersey law.[2] Therefore, the Court declines to reach the issue and assumes *arguendo* that the Smart Vent Complaint may trigger coverage under the disparagement provision of the Selective Policy.

1. Failure to Conform Exclusion

---

[2] See Superformance Intern., v. Hartford Cas. Ins. Co., 203 F. Supp. 2d 587, 600 (E.D. Va. 2002); General Products Co., Inc. v. Merideth Corp., 526 F. Supp. 546, 553 (E.D. Va. 1981). See also Mayflower Transit, LLC v. Prince, 314 F. Supp. 377, 378 (D.N.J. 2004); Storis, Inc. v. GERS Retail System, Inc., 1995 WL 337100 at *6 (D.N.J. May 31, 1995).

Selective argues that even if coverage is initially triggered by the disparagement provision, the allegations contained in the Smart Vent Complaint fit squarely within the Quality Or Performance Of Goods – Failure To Conform To Statements ("Failure to Conform") exclusion. This exclusion bars coverage for personal and advertising injury "arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in your 'advertisement.'" ECF No. 16-2 at SEL 0164. In contrast, CSD contends the Failure to Conform exclusion does not apply because the Smart Vent Complaint contains allegations that CSD falsely advertised and misrepresented not only its own products, but Smart Vent's products as well. In response, Selective argues that the gravamen of the Smart Vent claims is a failure of CSD's own products to conform to statements of quality and performance contained within its advertisements.

In support of its argument, Selective relies primarily on the reasoning set forth by the court in Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 692 S.E.2d 605 (N.C. 2010). In Harleysville, the Supreme Court of North Carolina analyzed a set of facts similar to the instant action and found that a failure to conform exclusion applied. In applying the failure to conform exclusion, the court explained that the exclusion "envisions a scenario in which a plaintiff shows that an insured's product is, in reality, something different from what the insured has advertised." Id. at 613. The court continued, "this exclusion removes from coverage 'personal and advertising injury' proximately caused by a false statement an insured has made about its own product." Id.

Although the underlying complaint at issue in Harleysville contained allegations that the insured had not only made false statements about its own products, but mentioned its competitor's product by name and advertised it as less effective than the insured's product, the

11

court found the failure to conform exclusion applied. Id. at 25. In reaching this conclusion, the court found that the essence of the underlying claims arose from the failure of the insured's own products to conform to the quality and performance represented in their advertisements. Id. at 25. In addition, the court held that the comparison between the two products "is alleged to be false not because defendants made representations that [the underlying plaintiff's] products were ineffective, but because [the insured] made allegedly false claims that [its] products worked just as well as, if not better than, [the plaintiff's] products. As such, the alleged falsity of the advertisement arises from the failure of [insured's] products to actually perform as well as [the insured] claim[s] they perform." Id. at 26. Finally, the court noted that the plaintiff never argued that the insured's advertisements falsely described its products. Id. at 27.

In opposition, CSD relies on JAR Laboratories LLC v. Great American E & S Ins. Co., 945 F. Supp. 2d 937 (N.D. Ill. 2013), in which the court found a similar failure to conform exclusion inapplicable. In JAR Laboratories, the court found that the insured's advertisements disparaged plaintiff's products by explicitly and implicitly comparing it to their own product. Id. at 944. The court found these disparaging comparisons to amounted to false statements about plaintiff's product and therefore found the failure to conform exclusion inapplicable.

The Failure to Conform exclusion in the instant action is unambiguous and clearly bars coverage for injuries arising from a failure of CSD's products to live up to statements of quality and performance contained in its advertisements. The relevant allegations in the underlying Smart Vent Complaint claim CSD: (1) falsely advertises its flood vents as compliant with the FEMA's requirements; (2) overstates the coverage areas of its flood vents and makes misleading statements that its products are the "best products in the market," are "unparalleled by industry standards," and "allow maximum . . . protection;" (3) falsely advertises that their flood vents

serve more enclosed space than the Smart Vent flood vents; and (4) misleads consumers into believing their products were protected by utility patents, when in fact they only have design patents. ECF No. 16-1 at SEL 0008-16. These allegations clearly center on the failure of CSD's products to live up to the statements of quality or performance contained in their various advertisements. Smart Vent does not allege the advertisements contain false descriptions of Smart Vent products; rather, the injury alleged by Smart Vent in the underlying complaint arises from CSD's alleged misrepresentations and false statements about its own products. While at least one CSD advertisement mentions Smart Vent by name and claims a CSD product covers more space than a similar Smart Vent product, the CSD advertisement never defined the capacity of Smart Vent's products. Rather, CSD made statements regarding the capacity of its own product and the essence of the injury alleged by Smart Vent arises from the CSD product's failure to conform to the advertised claim. As a result, the Failure to Conform exclusion applies and bars coverage for the Smart Vent allegations arising from CSD's alleged false and misleading advertisements.

### C. The "Use of Another's Advertising Idea in Your Advertisement" Provision

In addition to claims arising from CSD's alleged false and misleading advertisements, Smart Vent also contends that CSD intentionally infringed its incontestable trademark by, among other general allegations, using its "registered trademark 'SMART VENT' as a 'tag' and a 'meta-tag' in the coding of its website in order to (i) achieve a higher ranking and profile on Internet search engines, and (ii) to profit from the goodwill and high quality reputation of . . . Smart Vent." ECF No. 16-1 at SEL 0017. Both parties appear to acknowledge that this allegation may fall within policy coverage for "personal and advertising injury" arising from "use of another's advertising idea in your advertisement." ECF. No. 16-2 at SEL 0173. However,

13

Selective contends that coverage under this provision is barred by the "Infringement Of Copyright, Patent, Trademark or Trade Secretion" ("Intellectual Property Exclusion") and "Unauthorized Use Of Another's Name Or Product" ("Unauthorized Use Exclusion") exclusions. Id. at SEL 0165.

1. The Intellectual Property Exclusion

The Intellectual Property Exclusion bars coverage for "'[p]ersonal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your 'advertisement,' of copyright, trade dress or slogan." Id. Selective argues this provision excludes coverage under the policy because the Smart Vent Complaint includes one count dedicated to allegations of federal trademark infringement and alleges trademark infringement as a component of the remaining counts of unfair competition under the Lanham Act, unfair competition under New Jersey law, unfair competition at common law, and negligent misrepresentation. In response, CSD contends that the Smart Vent Complaint does not allege trademark use and therefore fails to sufficiently allege trademark infringement. There appears to be no dispute about whether the allegations regarding trademark infringement in the underlying Smart Vent Complaint may constitute "personal and advertising injury" under the Selective Policy. CSD's reliance on State Auto Property & Cas. Ins. Co. v. Travelers Indem. Co., 343 F.3d 249 (4th Cir. 2003) is therefore not relevant.[3]

The Selective Policy's Intellectual Property Exclusion is unambiguous and, pursuant to Virginia law, the Court gives the language its plain and ordinary meaning and enforces the provisions as written. When reading the exclusion narrowly, the Court finds that, to the extent

---

[3] In addition, the policy at issue in State Auto Property & Cas. Ins. Co. did not include an intellectual property exclusion.

14

the Smart Vent Complaint alleges trademark infringement, and unfair competition and negligent misrepresentation as a result of trademark violations, the Intellectual Property Exclusion bars coverage for those claims.

Despite CSD's contentions, Smart Vent specifically alleges use and infringement of its incontestable trademark by Crawl Space throughout the Smart Vent Complaint. See ECF No. 16-1 at SEL 0016-18, 0020, 0022-26. These allegations include claims that Crawl Space Doors used the SMART VENT trademark "in connection with its Internet marketing, to capture Smart Vent's good will and reputation, to drive more traffic to its website, to suggest endorsement by Smart Vent, and/or to falsely associate itself with quality products produced by Smart Vent." Id. at SEL 0016. In addition to Count V, which directly alleges federal trademark infringement pursuant to 15 U.S.C. § 1114, Counts I through IV of the Smart Vent Complaint include and incorporate allegations of trademark use and infringement as evidence of acts of unfair competition and negligent misrepresentation. These claims, in combination with the factual contentions contained in the Smart Vent complaint, directly allege trademark infringement and are the type of claims generally excluded by intellectual property exclusions.[4] See Superformance Intern., Inc. v. Hartford Cas. Ins. Co., 332 F.3d 215, 220-24 (4th Cir. 2003).

The United States Court of Appeals for the Fourth Circuit has found similar intellectual property exclusions to bar coverage for claims of unfair competition arising from trademark infringement. See Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co., 412 F. App'x 607, 610 (4th Cir. 2011); Superformance Int'l, Inc. v. Hartford Cas. Ins. Co., 332 F.3d 215 (4th Cir. 2003). The extent to which the Intellectual Property Exclusion applies to claims of unfair competition and negligent misrepresentation contained in the Smart Vent Complaint is determined by analyzing

---

[4] CSD's reliance on U-Haul Int'l, Inc. v. WhenU.com, Inc., 279 F. Supp. 2d 723 (E.D. Va. 2003), is unpersuasive. U-Haul did not involve issues of insurance coverage and is factually distinct from the instant action.

15

the degree to which the claims arise from trademark infringement. Although Count V of the Smart Vent Complaint clearly arises from trademark infringement, the degree to which Counts I through IV arise from trademark infringement varies. In this case, a particularized analysis of each count is unnecessary as the Failure to Conform Exclusion, as previously discussed, bars any claims potentially giving rise to coverage that do not sufficiently arise from trademark infringement.

    2. Unauthorized Use Exclusion

The Unauthorized Use Exclusion bars coverage for "'[p]ersonal and advertising injury' arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers." ECF No. 16-2 at SEL 0165. Selective contends this exclusion also bars coverage for the Smart Vent allegations that CSD intentionally used "SMART VENT" as a "tag" and a "meta-tag" in the coding of its website to achieve a higher ranking and profile on search engines and to profit from Smart Vent's reputation and goodwill. ECF No. 16-1 at SEL 0017. In contrast, CSD argues the exclusion does not apply because a "tag" is distinct from a "meta-tag" and the exclusion does not specifically bar coverage for use of another's name in a "tag." CSD also argues the exclusion does not apply because "the Smart Vent Complaint includes allegations that the use of the 'tag' included purposes that were distinct from misleading Smart Vent's potential customers." ECF No. 20 at 28.

It is unnecessary for the Court to decide whether the Unauthorized Use Exclusion bars coverage for claims arising from CSD's alleged use of the SMART VENT trademark because the Intellectual Property Exclusion applies and relieves Selective from covering such claims.

**IV. CONCLUSION**

16

The Court finds that the "Exclusions" in the Selective Policy regarding Failure to Conform and Intellectual Property are unambiguous and relieve Selective of its duty to defend and indemnify CSD in the <u>Smart Vent</u> action. In analyzing the <u>Smart Vent</u> Complaint, it appears to the Court that the claims and injuries alleged arise from CSD's allegedly false and misleading advertisements regarding its own product and not from statements regarding Smart Vent products. It also appears to the Court that the Intellectual Property Exclusion bars coverage for claims arising from allegations of trademark infringement. Therefore, Selective's Motion for Summary Judgment, ECF No. 17, is **GRANTED** and CSD's Motion for Partial Summary Judgment, ECF No. 19, is **DENIED**.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/ Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
February 22, 2016